IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JENNIFER SPERL**<br><br>**Plaintiff,**<br><br>vs.<br><br>**HARLAN GLOBAL MANUFACTURING, LLC**<br><br>**Serve Registered Agent:**<br><br>James Kaplan, Jr.<br>27 Stanley Road<br>Kansas City, KS 66115<br><br><br>**Defendant.** | Case No. |

**COMPLAINT**

Plaintiff Jennifer Sperl, by and through her counsel of record, states the following as her Complaint against Defendant Harlan Global Manufacturing, LLC:

**Parties, Jurisdiction and Venue**

1. Plaintiff Jennifer Sperl ("Plaintiff") is a resident of Kansas City, Platte County, Missouri, and was employed by Defendant Harlan Global Manufacturing, LLC ("Defendant") in Wyandotte County, Kansas.

2. Defendant is a Kansas limited liability company and is in good standing with the Secretary of State of Kansas. Defendant may be served via its registered agent James Kaplan, Jr., 27 Stanley Road, Kansas City, KS 66115.

3. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C § 1331

because Plaintiff's causes of action are based upon Defendants' violations of federal law, namely Title VII and/or the Americans with Disabilities Act.

4. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

5. The discriminatory acts that give rise to this cause of action occurred within 180 days of Plaintiff's filing of a Charge of Discrimination. *A true and accurate copy of Plaintiff's Charge of Discrimination is attached hereto as Exhibit A and is incorporated herein by reference.*

6. Notice of Right to Sue was given on June 22, 2020, and this action has been filed prior to the expiration of 90 days following the receipt of a right to sue notice. *A true and accurate copy of the Notice of Right to Sue is attached hereto as Exhibit B and is incorporated herein by reference.*

## Allegations Common to All Counts

7. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

8. Plaintiff began working at Defendant on or about July 25, 2018.

9. Plaintiff was employed by Defendant as a Human Resources Generalist.

10. Plaintiff was the sole employee in the Human Resources department.

11. Sometime prior to Plaintiff being hired by Defendant, Michael Axe was fired by Defendant for sexual harassment.

12. Shortly after Plaintiff was hired by Defendant, Mr. Axe was rehired by Defendant.

13. Plaintiff was not consulted on the decision to rehire Mr. Axe.

14. Mr. Axe was a friend of Jamie Kaplan, Defendant's CEO.

15. Mr. Kaplan knew Mr. Axe had been fired for sexual harassment.

16. On information and belief, Mr. Kaplan made the decision to rehire Mr. Axe.

17. On information and belief, Mr. Axe had actually been fired for sexual harassment and rehired twice.

18. Starting on or about September 20, 2018, Mr. Axe sexually harassed Plaintiff on multiple occasions.

19. Plaintiff told Mr. Axe his sexually inappropriate or suggestive statements were not welcome on multiple occasions.

20. Examples of Mr. Axe's sexual harassment include, but are not limited to:

   a. Plaintiff got a haircut, and Mr. Axe told her, "Don't cut your hair too short, the boyfriend will have nothing to hold on to."

   b. Mr. Axe leaned over Plaintiff's desk and said, "You smell so damn good."

   c. Mr. Axe and Plaintiff ran into each other at a blind corner in a hallway. Mr. Axe said, "We have to quit meeting like this or people will talk."

   d. He repeatedly called Plaintiff his "work wife" and told his son to call Plaintiff "Mom" because Mr. Axe was going to take Plaintiff away from her boyfriend (now husband).

   e. Mr. Axe followed Plaintiff into an enclosed area and said, "I'm going to be good and not say anything." He then said, "I hate to see you go, but I love to watch your ass shake."

21. Mr. Axe's sexually inappropriate or suggestive statements were severe or pervasive enough to alter the conditions of Plaintiff's employment.

22. Plaintiff told her Supervisor, Saleema Sears, about Mr. Axe's sexual harassment,

but she took no effective remedial action.

23. Mr. Axe continued to say sexually inappropriate or suggestive things.

24. On or about January 15, 2019, Plaintiff formally wrote up Mr. Axe for the sexual comments he had made to Plaintiff.

25. Prior to January 15, 2019, Plaintiff had received consistently positive feedback on her job performance.

26. Following writing up Mr. Axe on or about January 15, 2019, Plaintiff perceived that she was being treated differently than before the write-up.

27. Following writing up Mr. Axe on or about January 15, 2019, Plaintiff was treated negatively by management for no legitimate reason.

28. Plaintiff perceived this new, negative treatment from management until she was terminated on March 28, 2019.

29. Plaintiff has been diagnosed with type II diabetes.

30. Plaintiff's type II diabetes limits the major life activity of endocrine function.

31. Plaintiff was still able to perform the essential functions of her job with or without a reasonable accommodation.

32. Plaintiff's type II diabetes is a disability.

33. On March 27, 2019, Plaintiff's blood sugar spiked while she was at work.

34. Plaintiff felt very ill and called her husband, who is a nurse practitioner, to come check on her.

35. Kevin McCullogh, a vice president with Defendant, and Ms. Sears instructed Plaintiff to go home and rest.

36. Her husband came and got her, they left together, and her husband ensured that

her office door was locked before leaving.

37. When Plaintiff returned to work the next day, senior managers were in her office and had packed up her personal belongings.

38. The senior managers were Saleema Sears and Mike Althaber.

39. They informed Plaintiff that she was being fired.

40. They stated that Plaintiff was being fired because on March 27th Mr. McCullogh had been unable to locate a file in her office and because her office was not secured.

41. These reasons were pretextual.

42. Plaintiff was fired by Defendant in retaliation for writing up Mr. Axe, a personal friend of Defendant's CEO, for sexual harassment.

43. In the alternative, Plaintiff was fired because she has the disability of type II diabetes.

## Count I
## Sexual Harassment Under Title VII

44. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

45. Plaintiff is a member of a protected class by virtue of her sex.

46. Defendant, by and through its agents, sexually harassed Plaintiff as described above.

47. Plaintiff was treated differently with respect to the terms and conditions of her employment based on sex when Defendant failed to take effective remedial action against Mr. Axe following Plaintiff's complaints about his comments.

48. By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by male citizens in the creation, performance, enjoyment, and all benefits and privileges, of her contractual employment relationship with Defendant.

49. As a direct result of Defendant's harassment, Plaintiff has sustained damages.

50. Plaintiff was damaged by the above-mentioned harassment and is entitled to all remedies available to her, including but not limited to damages for loss of income, loss of benefits, embarrassment, humiliation, emotional distress and anguish, damage to her reputation, diminution in earning capacity, retirement and pension, and other damages as yet undetermined.

51. In its discriminatory actions as above-mentioned, Defendant has acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling her to an award of punitive damages in an amount that will punish and will deter Defendant and other from like conduct.

WHEREFORE, Plaintiff requests that the Court grant her, pursuant to a verdict by a jury, Judgment against Defendant for economic damages and garden-variety emotional distress damages in an amount that is fair and reasonable, along with punitive damages, and for her costs and attorney's fees, pre- and post-judgment interest, and for such other relief as the Court deems just and proper.

## Count 2
### Retaliation Under Title VII

52. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

53. During the term of her employment, Plaintiff engaged in protected activities by, among other things, making complaints regarding sexual harassment in the workplace and writing up Mr. Axe for his sexually inappropriate or suggestive statements to her.

54. Following Plaintiff's complaints, Defendant, through its employees, officers, and agents, retaliated against Plaintiff through the unjustified disciplinary actions and terminating Plaintiff's employment.

55. Following Plaintiff writing up Mr. Axe for his sexually inappropriate or

6

suggestive statements to her, Defendant, through its employees, officers, and agents, retaliated against Plaintiff through the unjustified disciplinary actions and terminating Plaintiff's employment.

56. Defendant's retaliatory actions were performed because Plaintiff engaged in the above-described protected activity.

57. The proffered reasons for her termination pretextual.

58. By committing the above-mentioned retaliation, Defendant intentionally engaged in unlawful practices that deprived Plaintiff of the same rights as are enjoyed by male citizens to the creation, performance, enjoyment, and all benefits and privileges, of her contractual employment relationship with Defendant.

59. As a direct result of Defendant's retaliation against Plaintiff, she has sustained damages.

60. In its retaliatory actions as above-mentioned, Defendant acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages in an amount that will punish and will deter Defendant and other from like conduct.

WHEREFORE, Plaintiff requests that the Court grant her, pursuant to a verdict by a jury, Judgment against Defendant for economic damages and garden-variety emotional distress damages in an amount that is fair and reasonable, along with punitive damages, and for her costs and attorney's fees, pre- and post-judgment interest, and for such other relief as the Court deems just and proper.

## Count III
## Disability Discrimination Under the Americans with Disabilities Act

61. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

62. In the alternative to Counts I and II of this Complaint, Plaintiff states as follows.

63. Plaintiff is a member of a protected group based on her having type II diabetes.

64. Plaintiff was able to perform the essential functions of her job with or without a reasonable accommodation.

65. Defendant, through its employees, officers and agents, discriminated against Plaintiff by firing her because of her disability.

66. Plaintiff was fired the morning after she had to leave work for part of the day due to her disability.

67. The proffered reasons for her termination were pretextual.

68. As a direct result of Defendant's discrimination, Plaintiff has sustained damages.

69. Defendant acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages in an amount that will punish and will deter Defendant and other from like conduct.

WHEREFORE, Plaintiff requests that the Court grant her, pursuant to a verdict by a jury, Judgment against Defendant for economic damages and garden-variety emotional distress damages in an amount that is fair and reasonable, along with punitive damages, and for her costs and attorney's fees, pre- and post-judgment interest, and for such other relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted,

**SMITH LAWRENCE, LC**

By /s/ Jeffrey S. Lawrence
Jeffrey S. Lawrence #78699
4310 Madison Ave
Ste 110
Kansas City, Missouri  64111
816.753.9393

816.778.0957 FAX
jeff@smithlawrence.com
**ATTORNEY FOR PLAINTIFF**